[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-11761
Non-Argument Calendar
_____

D.C. Docket No. 5:13-cv-00211-RH-EMT

ADAM SAPP,

                                        Plaintiff - Appellant,

versus

U.S. ATTORNEY GENERAL,

                                        Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(January 19, 2017)

Before HULL, WILSON, and JORDAN, Circuit Judges.

PER CURIAM:

Adam Sapp appeals the district court's grant of the U.S. Attorney General's renewed motion for summary judgment on his retaliation claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as well as the court's denial of his Rule 59(e) motion to alter or amend the judgment. The Federal Bureau of Prisons reassigned Mr. Sapp and denied him opportunities to work overtime while an investigation concerning his alleged professional misconduct was pending. He asserts that the BOP performed these actions in retaliation of an Equal Employment Opportunity ("EEO") complaint he filed alleging gender discrimination. Following review of the record and the parties' briefs, we affirm.

## I

Because we write for the parties, we assume their familiarity with the underlying record and recite only what is necessary to resolve this appeal.

Mr. Sapp worked as a Special Investigation Section ("SIS") technician at the BOP's Federal Correctional Institution in Marianna, Florida. Beginning in 2011, Mr. Sapp was placed under investigation for, among other things, allegedly providing confidential information to inmates. On November 1, 2011, the BOP reassigned him from the SIS office to a phone monitoring position to limit his access to the inmate population. The BOP also placed him under supervision due to the ongoing investigation. The BOP denied Mr. Sapp overtime work beginning on November 9, 2011, and continuing throughout the period of his reassignment.

2

Around the same time, Mr. Sapp filed a request for EEO counseling, claiming that BOP Captain Theresa Lewis had treated him negatively because of his gender and in retaliation for their past personal and intimate relationship. The BOP investigation was completed 13 months later, with no findings sustained against him. Mr. Sapp alleged that although the investigation ended in October of 2012, he was not returned to the SIS office or permitted to work overtime until January of 2013. He filed the instant suit in 2013, alleging Title VII gender discrimination and retaliation.[1]

This is not the first time we have heard this case. The district court previously granted summary judgment in favor of the BOP on Mr. Sapp's gender discrimination and retaliation claims. Mr. Sapp appealed, and we affirmed as to his discrimination claim, but vacated the grant of summary judgment on the retaliation claim and remanded the case for the district court to address Mr. Sapp's pretext arguments. *See Sapp v. Att'y Gen. of the United States*, 613 F. App'x 916 (11th Cir. 2015).

---

[1] It is unclear when Mr. Sapp first contacted the EEO or when the BOP became aware of his discrimination complaint. Mr. Sapp wrote in his formal Department of Justice grievance form and swore in his interrogatory answers that he filed an EEO complaint on December 8, 2011. *See* D.E. 116-8 at 1; D.E. 116-6 at 7, 12. Mr. Sapp's EEO complaint, filed on January 13, 2012, listed the date of his first contact with the EEO as November 20, 2011. *See* D.E. 116-13 at 1. In response to the BOP's requests for admissions, Mr. Sapp also admitted that he did not advise anyone in his chain of command that he was being subjected to discrimination prior to November 20, 2011. *See* D.E. 116-2 ¶ 1; D.E. 116-3 ¶ 1. The only evidence Mr. Sapp offers in support of his contention that he first engaged in protected activity on November 8, 2011 (*i.e.* before the first denial of overtime on November 9, 2011) is the DOJ's decision concerning his grievance. *See* D.E. 45-20. That decision states that Mr. Sapp first contacted an EEO counselor on November 8, 2011, but does not cite to any documentation. *See id.* at 3.

3

On remand, the parties agreed to supplemental summary judgment briefing and the BOP filed a renewed motion for summary judgment. The district court granted the motion on two grounds: (1) Mr. Sapp had not established a prima facie case of retaliation because the overtime decision had been made before he engaged in—or the decision-maker learned of—the protected activity, and therefore he could not show causation; and (2) there was a legitimate, non-retaliatory reason for denying overtime—namely, the investigation—and the record did not demonstrate that this reason was pretextual. *See* D.E. 126 at 38.

Mr. Sapp argues on appeal that summary judgment was improperly granted because the law-of-the-case doctrine precluded the district court from considering the issue of whether he had established a prima facie case of retaliation and because he demonstrated that the BOP's proffered reason for the adverse action were pretextual. He also argues that the district court erred in denying his Rule 59(e) motion for reconsideration.

## II

We review a district court's grant of summary judgment *de novo*, applying the same legal standard used by the district court and drawing all factual inferences in the light most favorable to the nonmoving party. *See Johnson v. Bd. of Regents*, 263 F.3d 1234, 1242–43 (11th Cir. 2001). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file,

4

together with the affidavits . . . show that there is no genuine issue as to any material fact and that the nonmoving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal citation omitted). In order to overcome a motion for summary judgment, the nonmoving party must present more than a mere scintilla of evidence supporting its position, and instead must make a sufficient showing that a jury could reasonably find in its favor. *See Brooks v. Cty. Comm'n of Jefferson Cty., Ala.*, 446 F.3d 1160, 1162 (11th Cir. 2006).

We also review the application of the law-of-the-case doctrine *de novo*. *United States v. Bobo*, 419 F.3d 1264, 1267 (11th Cir. 2005). The doctrine provides that "a legal decision made at one stage of the litigation, unchallenged in a subsequent appeal when the opportunity existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time." *United States v. Escobar-Urrego*, 110 F.3d 1556, 1560 (11th Cir. 1997) (citation omitted).

### III

Title VII prohibits employers from discriminating on the basis of sex and also prohibits retaliation against an employee who has opposed any unlawful employment practice or who has made a charge, testified, assisted, or participated in any manner in a Title VII proceeding. *See* 42 U.S.C. §§ 2000e-2(a)(1),

5

2000e-3(a). *See also* 42 U.S.C. § 2000e-16(a) (stating that federal employees are also provided these protections under Title VII).

Title VII retaliation claims generally "require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013). Where, as here, a plaintiff relies on circumstantial evidence, we are guided by the burden-shifting *McDonnell Douglas* framework, which requires that the plaintiff first make a prima facie case of retaliation to trigger the defendant's burden of articulating a legitimate, non-retaliatory reason for the adverse employment action. *See Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001).[2] If the employer satisfies this burden, then the employee must provide sufficient evidence that the proffered reason is merely a pretext for retaliation. *See id.*

Mr. Sapp argues that the law-of-the-case doctrine precluded the district court from addressing and concluding on remand that he had failed to establish a prima facie case of retaliation. We need not reach this issue, however, because, even assuming Mr. Sapp has established a prima facie case, he has failed to demonstrate that the BOP's legitimate, non-retaliatory reason for denying him overtime work—that he was under investigation and all of the positions in which overtime could

---

[2] A plaintiff may establish a prima facie case of retaliation by showing that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse action; and (3) there is a causal connection between the protected activity and the adverse action. *See Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010).

have been made available involved inmate contact or entailed working without supervision—was mere pretext for retaliation and that he would not have been denied overtime but for the BOP's desire to retaliate. We discuss Mr. Sapp's evidence of pretext below.

Mr. Sapp identifies as comparators a number of officers who had been investigated for violations such as abuse of inmates or introduction of contraband, but were not punished like him. Although a plaintiff may establish pretext by presenting evidence that a similarly situated employee outside the protected class was treated more favorably, the comparator "must be similarly situated in all relevant respects." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004) (internal quotation marks and citation omitted). Indeed, "[t]he comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." *Id.* Mr. Sapp's proferred comparators were correctional officers and did not work in the SIS office. An SIS technician's duties, responsibilities, and access to confidential information are distinct from those of correctional officers. Moreover, the comparators' alleged violations, while certainly serious, were different from the allegations against Mr. Sapp and may not have required a complete prohibition on inmate contact or similar level of supervision. For example, an officer accused of assaulting a female inmate might still be permitted to work with male inmates. In light of Mr. Sapp's unique position

7

as an SIS technician and the nature of his alleged misconduct, he has failed to identify a comparator similarly situated in all relevant respects.

Mr. Sapp also cites to the fact that he was still permitted contact with inmates through the monitoring of their phone calls, and to the deposition testimony of Rhonda Burke, a human resources manager, who said that Mr. Sapp may have been able to work overtime posts in the control center or mail room without being around inmates. But "Title VII is not designed to make federal courts sit as a super-personnel department that reexamines an entity's business decisions." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1244 (11th Cir. 2001) (internal quotation marks and citation omitted). Mr. Sapp has not presented evidence demonstrating that he had any meaningful opportunity for inmate contact through the monitoring of their phone calls or that the alternative overtime posts tentatively suggested by Ms. Burke would be feasible or appropriate in light of the BOP's restrictions. We decline to second-guess the BOP's wisdom in determining appropriate action for an SIS technician subject to an ongoing investigation, particularly given upon Mr. Sapp's conclusory and tentative assertions.

Mr. Sapp further argues that pretext is shown by the BOP's continued denial of his overtime requests until January of 2013, approximately three months after the investigation was completed. Again, "[a] plaintiff is not allowed to recast an employer's proferred nondiscriminatory reasons or substitute his business

8

judgment for that of the employer." *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000).  It is undisputed that once Mr. Sapp was back in the SIS position, he was allowed to work overtime. He has provided no evidence that such delay is atypical following completion of an investigation.

Mr. Sapp says that the BOP offered him two different reasons for denial of overtime work—a statement from Ms. Burke in early December of 2011 that the BOP did not want him working with weapons due to his prior stress leave, and a statement in mid-to-late December of 2011 from the assistant warden that the BOP did not want him to have inmate contact because of the ongoing investigation. *See* Sapp Aff., D.E. 125-1 ¶¶ 10–11. He argues that this demonstrates BOP's dishonesty and maintains that these conflicting statements, alone, are sufficient to establish pretext. The record, however, belies his assertion.

As early as November 1, 2011, Mr. Sapp received a memorandum stating that, due to the investigation, he was not permitted to go past a certain door into the prison facility. *See* D.E. 45-18. The BOP then denied Mr. Sapp's November 9, 2011, request for overtime, explaining that "overtime is offered inside the institution" and that Mr. Sapp, "per management, is currently assigned outside the institution." D.E. 116-1at 36. Mr. Sapp's overtime logs include notations with various iterations of this statement in response to his overtime requests throughout 2011 and 2012. *See id.* at 20–36. Furthermore, on December 16, 2011, the BOP

sent Mr. Sapp a memorandum clarifying that, as previously advised, he was not to go past certain areas into the prison facility, that he was not to have any inmate contact, and that this action was taken based on the investigation. *See* D.E. 116-5.

The record demonstrates that the BOP consistently cited the ongoing investigation and corresponding restrictions as the reason for denying his overtime requests. That Ms. Burke provided Mr. Sapp with a different or alternate reason does not itself show pretext. *Cf. Holland v. Washington Homes, Inc.*, 487 F.3d 208, 216 (4th Cir. 2007) (holding that employer's report to state employment agency providing a reason for termination that was different than employer's proffered reason did not create a genuine and material issue of fact as to pretext, particularly when evidence showed the inaccurate reporting benefitted employee); *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 541 (7th Cir. 2007) (rejecting employee's argument that employer's reasons for termination—rude behavior, insubordination, and not recognizing her own inappropriate behavior—were inconsistent and demonstrated pretext because the three reasons were not necessarily inconsistent and employer "could have relied on all three reasons simultaneously, regardless of whether it emphasized one over the others at a given time")

In light of the investigation, Mr. Sapp's assertions regarding his placement in the phone-monitoring post, Ms. Burke's comments, and the BOP's delay in returning him to the SIS position, as well as his proffered comparators, are not

10

sufficient to create a jury question on pretext, much less that the BOP's desire to retaliate was the but-for cause of its denial of Mr. Sapp's overtime requests.

## IV

Mr. Sapp also argues that the district court erred in denying his Rule 59(e) motion to alter or amend the judgment. We review the denial of a Rule 59(e) motion for abuse of discretion. *See Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007). "The only grounds for granting a Rule 59 motion are newly-discovered evidence or manifest errors of law or fact." *Id.* (internal alternation and citation omitted). It cannot be used to "relitigate old matters, raise arguments or present evidence that could have been raised prior to entry of judgment." *Id.* (internal alternation and citation omitted).

Because nothing in the district court's order granting summary judgment constituted a manifest error of law or fact, the court did not abuse its discretion in denying Rule 59(e) relief. Further, all of the evidence and argument contained in the motion were available and could have been presented in opposition to the BOP's renewed motion for summary judgment.

## V

For the foregoing reasons, we affirm the district court's grant of summary judgment and denial of Mr. Sapp's Rule 59(e) motion.

**AFFIRMED.**

11